# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JACQUELINE DODSON,
O/B/O S.L.S.,
     Plaintiff

Case No. 1:11-cv-332
Spiegel, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant

**REPORT AND
RECOMMENDATION**

Jacqueline Dodson, on behalf of her son S.L.S., brings this action pursuant to 42 U.S.C. §

405(g) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's application for children's Supplemental Security Income

(SSI) disability benefits. This matter is before the Court on plaintiff's Statement of Errors (Doc.

20), the Commissioner's response in opposition (Doc. 21), and plaintiff's reply memorandum.

(Doc. 22).

## I. Procedural Background

Plaintiff filed an application for SSI in January 2007 when he was six years old alleging

disability due to attention deficit hyperactivity disorder (ADHD), a learning disability, asthma,

mood disorder, and oppositional defiant disorder. Plaintiff's application was denied initially and

upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing

before Administrative Law Judge (ALJ) Sarah Miller. Plaintiff, his mother, and a medical expert

(ME) appeared and testified at the ALJ hearing. On November 2, 2009, the ALJ issued a

decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the
Commissioner.

## II. Medical and Academic Evidence

The pertinent medical and academic findings and opinions have been adequately
summarized by the parties in their briefs (Doc. 20 at 1-7; Doc. 21 at 2-4) and will not be repeated
here.  Where applicable, the Court shall identify the evidence relevant to its decision.

## III. Analysis

### A. Legal Framework for Children's SSI Disability Determination

An individual under the age of 18 is considered disabled for purposes of SSI "if that
individual has a medically determinable physical or mental impairment, which results in marked
and severe functional limitations, and which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §
1382c(a)(3)(C)(i).  The Social Security regulations set forth a three-step sequential analysis for
determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child engaged in any substantial gainful activity?  If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments?  If
> not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the
> Listing of Impairments, Appendix 1 of 20 C.F.R. pt. 404, subpt. P.  20 C.F.R. §
> 416.924(a)?  If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).  An impairment which meets or medically equals the severity of a set
of criteria for an impairment in the Listings, or which functionally equals a listed impairment,
causes marked and severe functional limitations.  20 C.F.R. § 416.924(d).

In determining whether a child's impairments functionally equal the Listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the Listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

3

If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

## B. The Administrative Law Judge's Findings

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born [in] . . . 2000.

2. The claimant has not engaged in substantial gainful activity since January 10, 2007, the application date (20 C.F.R. 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder, learning disability, asthma, mood disorder, and oppositional defiant disorder (20 C.F.R. 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since January 10, 2007, the date the application was filed (20 C.F.R. 416.924(a)).

(Tr. 14, 15, 23).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. The claimant has less than marked limitation in acquiring and using information. (Tr. 17).

2. The claimant has less than marked limitation in attending and completing tasks. (Tr. 18).

3. The claimant has less than marked limitation in interacting and relating to others. (Tr. 19).

4. The claimant has no limitation in moving about and manipulating objects. (Tr. 21).

5. The claimant has less than marked limitation in the ability to care for himself. (Tr. 21).

6. The claimant has no limitation in health and physical well-being. (Tr. 22).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

545-46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues: (1) the ALJ erred in failing to provide any explanation as to why she ruled that [plaintiff's] impairments failed to meet or equal Listing 112.11 for ADHD; (2) the ALJ erred when she failed to consider the effect of behavioral problems and problems with communication in [plaintiff's] impairment in the domain of Acquiring and Using Information; (3) the ALJ erred in failing to consider how [plaintiff] would perform without the extra structure provided to accommodate his impairments; and (4) the ALJ erred when she dismissed the abundant evidence from his teachers showing a "marked" limitation in Interacting and Relating with Others in favor of a few citations from testing in controlled environments.

### 1. Whether the ALJ's finding of less than marked limitations in the domain of Acquiring and Using Information is supported by substantial evidence and whether the ALJ failed to consider plaintiff's ability to function without a supportive structure.

Plaintiff's second and third assignments of error are interrelated and will be considered together.

Plaintiff contends the ALJ erred when she failed to consider the effect of plaintiff's behavioral and communication problems in assessing plaintiff's limitations in the domain of Acquiring and Using Information. Plaintiff asserts the ALJ improperly minimized plaintiff's low academic skills development by stating it was influenced by his problems with behavior and communication. Plaintiff argues the ALJ incorrectly dismissed the evidence showing marked limitations in the domain of Acquiring and Using Information by concluding that any such limitations were caused by plaintiff's deficits in Interacting and Relating With Others domain in

6

contravention of Social Security regulations. Plaintiff also argues the ALJ failed to consider how plaintiff would function without the extra structure provided to accommodate his impairments. The Court agrees.

Under the domain of Acquiring and Using Information, the ALJ must consider the child's ability to learn information and to think about and use the information. 20 C.F.R. § 416.926a(g). A child must "be able to use language to think about the world and to understand others and express [himself]; e.g., to follow directions, ask for information, or explain something." 20 C.F.R. § 416.926a(g)(1)(ii). School records provide important information in assessing limitations in the domain of Acquiring and Using Information. SSR 09–3p. "Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s)." *Id.* School records may reveal that mental or physical impairments interfere with the child's ability to acquire and use information by showing the child receives:

> • Special education services, such as assignment of a personal aide who helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.

> • Related services to help the child benefit from special education, such as occupational, physical, or speech/language therapy, or psychological and counseling services.

> • Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring.

> The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s).

SSR 09–3p. The ALJ must also "consider evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information)" and limitations are assessed in all settings, not just in school. *Id.* SSR 09–3p also provides examples of indicators of normal functioning of adolescents (age 6 to attainment of age 12) in the domain of Acquiring and Using Information:

> • Learns to read, write, and do simple arithmetic.
>
> • Becomes interested in new subjects and activities (for example, science experiments and stories from history).
>
> • Demonstrates learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions.
>
> • Applies learning in daily activities at home and in the community (for example, reading street signs, telling time, and making change).
>
> • Uses increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to the opinions of others.

SSR 09–3p. *See also* 20 C.F.R. § 416.926a(g)(2)(iv).

In the instant case, the ALJ determined that plaintiff has less than marked limitations in the domain of Acquiring and Using Information "based on the testimony of the medical expert." (Tr. 17). Dr. Schwartz, the medical expert at the hearing, testified, "When he is on his medications and he is in the optimal IEP situation, I would put 'less than marked.'" (Tr. 65). The ALJ also stated her assessment was supported by state agency physician Dr. Mormol who noted plaintiff achieved a full scale IQ of 90 during consultative examination. (Tr. 17). The ALJ acknowledged that plaintiff's academic skill development was significantly below age and grade level expectations, but stated this would "be influenced by poor parenting skills, problems in communications, and problems with behavior." (Tr. 18). The ALJ also cited to testing in June

2007 demonstrating intellectual functioning in the below average range with numerical reasoning skills in the average range. *Id.* That same testing indicated that prior tests results were inconsistent and that plaintiff's motivation may have been a factor explaining the inconsistent results. (Tr. 18, 383).

The Social Security regulations recognize that limitations in one functional domain may impact functioning in another domain: "[A]ny given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s)." 20 C.F.R. 416.926a(c).[1] In deciding that plaintiff's limitations in Acquiring and Using Information were less than marked, the ALJ focused on plaintiff's IQ test scores in March 2007 showing a full scale IQ of 90, indicating low average to average level of intellectual functioning, in contrast to plaintiff's 2006 scores showing a full scale IQ of 68 and his "significantly below age and grade" academic skill development. (Tr. 17-18). The ALJ gave great weight to the testimony of the medical expert, Dr. Schwartz, who explained that the variability of the scores "could be as a result of his oppositional defiant disorder and hyperactivity, with these affecting his willingness to participate in testing." (Tr. 16). In essence, the ALJ concluded that plaintiff has the intellectual capacity to acquire and use information, but his behavior and attention problems interfere with this ability. Yet, that seems to be precisely the

---

[1] The relevant section provides:

The interactive and cumulative effects of an impairment or multiple impairments. When we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and your limitations and restrictions. Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s).

20 C.F.R. § 416.926a(c).

point of the regulation: that the influence of impairments in one domain may adversely effect a child's functioning in another domain and must be considered in assessing the severity of functioning in all domains. Instead of considering how plaintiff's behavior and attention impairments adversely affected his ability to acquire and use information under the relevant domain, the ALJ improperly discounted the severity of plaintiff's functioning in the domain based on his deficits in another domain, *i.e.,* Interacting and Relating With Others.[2]

In addition, the whole child approach to functional equivalence requires a comparison of how the child is functioning in relationship to his or her peers. *See* Social Security Ruling 09-1p (functional equivalence to a listed impairment requires consideration of "how the child functions every day and in all settings compared to other children the same age who do not have impairments."). Absent from the ALJ's decision is a longitudinal view of plaintiff's functioning which shows that despite special education and related services, plaintiff is still significantly behind his peers in the relevant domain indicating serious limitations of functioning in acquiring and using information.

In kindergarten, plaintiff was identified as a student who was "performing significantly below his peers in all academic areas" and who was unable to complete work independently. (Tr. 281, 285). Since beginning the first grade in August 2006, plaintiff received speech/language therapy, occupational therapy, classroom modifications, and daily small group direct instruction with the intervention specialist. (Tr. 225). He was placed in a special education classroom for students with Cognitive Disability. (Tr. 365). When he started the first grade, he was working at

---

[2]Contrary to the Commissioner's contention, the record does not contain evidence from which the Court may "presume" that Drs. Schwartz and Mormol considered the effects of limitations in one domain upon another domain by virtue of their "expertise" in disability determinations. (Doc. 21 at 8).

a pre-kindergarten level. His teachers noted that he needed one-to-one assistance and his task persistence and ability to complete assignments independently was negligible. (Tr. 365). Psychological testing in November 2006 revealed a full scale IQ of 68, indicating plaintiff was functioning significantly below other children his age. (Tr. 338). He demonstrated significant delays relative to adaptive functioning (borderline functioning in communication, daily living and socialization). (Tr. 338-39, 365). Standardized checklists revealed clinically significant problems with inattention. (Tr. 339, 365). He was ranked in the Markedly Atypical range on the Oppositional, Cognitive Problems/Inattention, and Hyperactivity subtests at both home and in school. (Tr. 340).

On psychological testing in March 2007, plaintiff obtained a full scale IQ of 90, which the psychologist noted was "significantly higher than the cognitive aptitude equivalent obtained during school-based assessment approximately one year ago." (Tr. 366). The psychologist noted, however:

> In contrast to the IQ scores, [plaintiff's] academic skill development is significantly below age and grade expectations. Scores on the Wide Range Achievement Test (4th edition) were commensurate with deficits noted in previous evaluations and classroom-based observations. Although this measure is only a basic screening tool, it suggests that [plaintiff's] academic skills at kindergarten level or below. Not surprisingly, adaptive behavioral functioning is deficient. While his mother may have had a somewhat negative response set, [plaintiff] does not display independent self-care skills. Communication skills are deficient, relative to underachievement in school. [Plaintiff] is often oppositional and defiant, contributing to deficits in the area of socialization. Behavior is not always appropriate with peers. Fine motor skill deficits are identified on the adaptive behavior scale, and corroborated with independent occupational therapy evaluation.

> **Discussion of age-related capabilities:**
> Learning disabilities have been identified and [plaintiff] qualifies for special education services based on that classification. Additionally, he has been diagnosed with ADHD and treated medically for the condition. School-based

11

accommodations and interventions have been developed to address social, emotional, behavioral and academic issues at school. Fine motor skill deficits are documented. Significant academic skill deficits have been identified. Given these factors, the following functional estimates are rendered:

• Cognitive/intellectual functioning is estimated at 90% of age-related expectations.

• Academic functioning is estimated at 68% of age-related expectations.

• Social skills and socialization is estimated at 67% of age-related expectations.

• Emotional control, emotional maturity and behavioral adjustment are estimated at 69% of age-related expectations.

• Self-care and domestic adaptive skills are estimated at 75% of age-related expectations.

(Tr. 367).

As a third grader, plaintiff received speech therapy, occupational therapy, and special education teacher services under the identification of Cognitive Disability. (Tr. 220). Testing in March 2009 revealed that plaintiff was reading at a beginning to mid-first grade level and his writing skills were at a beginning first grade level. (Tr. 229-30). Plaintiff needed "a significant amount of curricula modification in order to complete reading and writing tasks" and was "unable to independently read directions or any grade-level passages." (Tr. 230). His reading and writing skills tested within the Very Low range (Broad Reading score of 58 and Broad Written Language score of 53, with standard scores having a mean of 100 with a standard deviation of 15). (Tr. 229, 241). Plaintiff demonstrated a relative strength in math skills with calculation and math fluency skills in the Low Average range. (Tr. 241). Plaintiff's third grade teacher reported that he "needs full time assistance" and that the accommodations made for him included being able to take exams orally; having a modified grading scale, extra time for work

and test completion, shortened assignments, all text and directions read aloud, reduced written work, and preferential seating next to the teacher "for help"; being given a copy of the teacher's notes or notes from the board; being able to retake tests or redo tests for higher grades; and taking exams in the resource room or other quiet environment. (Tr. 234). Yet, none of this evidence from 2009 is even mentioned by the ALJ in determining plaintiff's limitations in acquiring and using information.

As noted, the ALJ's decision fails to discuss any of the 2009 testing or school information when plaintiff was in third grade. Particularly troublesome is the ALJ's failure to acknowledge plaintiff's "Total Achievement" score on the Woodcock-Johnson III Normative Update Tests of Achievement administered in March and April 2009. "Total Achievement" is defined as "a comprehensive measure of reading, math, and writing achievement, including basic reading skills, reading comprehension, math calculation skills, math problem-solving, spelling, and production of written sentences." (Tr. 231). Plaintiff's Total Achievement scores showed that "[b]ased on a comparison to others of his age, [plaintiff's] Total Achievement national percentile rank of 0.3 means that he scored in the lowest 1 percent of nine-year-old children nationally on that measure." (Tr. 232). "A score at or below the first percentile satisfies the SSA's regulatory definition of a marked limitation, since the bottom 2.3 percent of any population is more than two SDs [standard deviations] below the mean."[3] *McClain v. Barnhart*, 299 F. Supp.2d 309, 325 (S.D.N.Y. 2004) (citing *Duran v. Barnhart*, No. 01 Civ. 8307, 2003 WL 103003, at *10 (S.D.N.Y. Jan. 13, 2003)).

---

[3]A "marked" limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i).

The ALJ's decision does not reflect any comparative analysis, nor does it acknowledge the serious deficiencies in plaintiff's ability to comprehend written language and his ability to write – two areas the Social Security Ruling on the relevant domain highlight as examples of limitations in the domain of Acquiring and Using Information. *See* SSR 09-1p (examples of limitations considered in this domain include that the child is not reading, writing, or doing arithmetic at appropriate grade level; or has difficulty comprehending written or oral directions). When viewed in the context of the record as a whole, along with the special education and supportive services plaintiff received over the years, these problems strongly suggest marked or extreme limitations in the relevant domain. Yet, the Court is unable to discern if the ALJ overlooked the accommodations and deficits set forth in the 2009 academic and testing evidence or simply ignored them in assessing plaintiff's limitations in the domain of Acquiring and Using Information. *See* SSR 09-3p (highlighting the importance of special education services, related services, and other accommodations made for a child).

Moreover, the ALJ's decision fails to reflect she considered the effect of plaintiff's inability to function independently and the significant structure and supportive services provided to him. The ALJ does not discuss whether she considered, evaluated, and rejected or accepted the evidence showing plaintiff was unable to initiate and complete tasks independently. As the regulations define "marked" and "extreme" limitations in relation to a child's ability to "*independently* initiate, sustain, or complete activities," 20 C.F.R. §§ 416.926a(e)(2)(i), 416.926a(e)(3)(i)(emphasis added), it was incumbent upon the ALJ to give some indication on the record that these critical factors were considered. Additionally, the regulations require the ALJ to examine how much extra help a child needs and the effects of structured or supportive

14

settings. *See* 20 C.F.R. § 416.926a(a)(1). While the ALJ mentioned that plaintiff was "receiving one-on-one assistance" in reading, math and writing from May 2007 to May 2008 in connection with the *severity* step of the sequential evaluation process (Tr. 14, citing Tr. 414-28), there is no indication from the ALJ's decision that she considered the effect of plaintiff's structured environment, supportive services, and need for one-on-one assistance to complete assignments in assessing plaintiff's functioning in the domain of Acquiring and Using Information as mandated by the Social Security regulations:

> A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, *we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting.* Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings *and whether you would continue to function at an adequate level without the structured or supportive setting.*

20 C.F.R. § 416.924a(b)(5)(iv)(C) (emphasis added). *See also* Social Security Ruling 09–1p, Section III (recognizing that child who "needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning" is not "as independent as same-age peers who do not have impairments"). Even Dr. Schwartz acknowledged that plaintiff's functioning may be more limiting without a structured or supportive setting. When asked to opine on plaintiff's limitations in the domain of Acquiring and Using Information, Dr. Schwartz testified, "When he is *on his medications* and *he is in the optimal IEP situation*, I would put 'less than marked.'" (Tr. 65)(emphasis added). Yet, without any discussion by the ALJ of the effect of plaintiff's functioning in and outside of a structured or supportive setting, the Court cannot assume the ALJ considered this factor in assessing plaintiff's

limitations in the domain of Acquiring and Using Information, let alone in any of the other domains of functioning. The ALJ's failure to explain her decision in this regard makes it impossible to determine what evidence the ALJ considered, accepted as credible, and rejected as unpersuasive. In the absence of any indication in the ALJ's decision that she considered the effect of plaintiff's functioning outside of his structured school setting and a clear articulation of the reasons for rejecting such evidence, meaningful review of the ALJ's finding is impossible.

Because the ALJ failed to articulate any reasons for discounting these factors in his decision, the Court is unable to conclude that the ALJ's finding that plaintiff has less than marked limitations in the domain of Acquiring and Using Information is supported by substantial evidence. Therefore, plaintiff's second and third assignments of error should be sustained.

**2. Whether the ALJ's finding that plaintiff has less than marked limitation in the domain of Interacting and Relating with Others is supported by substantial evidence.**

Plaintiff contends the ALJ ignored evidence of plaintiff's serious limitations in his ability to interact with and relate to others in favor of selected consultative examinations showing he was "cheerful and talkative" and "pleasant" and successfully completed an anger management program. (Tr. 19). Plaintiff cites to evidence showing he becomes verbally and physically abusive at school and home; he acts inappropriately at school; he threatened to kill family members because mother was taking bullets from him, threw objects at police, and had to be restrained by hospital staff upon admission to the hospital; and standardized testing results showing over a two standard deviation from the normal values in socialization areas, including social skills and socialization estimated at 67% of age-related expectations and emotional control, maturity, and behavioral adjustment estimated at 69% of age-related expectations.

The Commissioner contends that even though plaintiff can point to evidence supporting an opposite decision, the ALJ's decision is not subject to reversal on that basis. The Commissioner asserts the ALJ noted a broad range of evidence–both positive and negative–including observations by psychologists during evaluations in October and November 2006 and June 2007; observations by an occupational therapist in 2007-08; records from Hamilton Counseling indicating that plaintiff had successfully completed an anger management program; plaintiff's mother's reports regarding his school disciplinary history; and the state agency doctor's opinion that plaintiff had less than marked limitations in this domain. (Tr. 19).

As with her decision on the domain of Acquiring and Using Information, the ALJ failed to discuss the most recent evidence from 2009 in evaluating plaintiff's functioning in the domain of Interacting and Relating With Others. The ALJ cited to plaintiff's mother's testimony regarding limited school discipline, but ignored the mother's testimony of plaintiff's violent and destructive behavior at home (*see, e.g.*, Tr. 42-44). The ALJ noted that plaintiff "successfully participated" in an anger management group in May 2009, but then failed to mention that three months later in August 2009, plaintiff (at nine years old) became enraged when his mother took bullets away from him, threatened to kill family members, threw objects at the police who had been called, and had to be physically restrained by hospital staff upon his admission to Children's Hospital. (Tr. 35-38). Nor did the ALJ mention that plaintiff was hospitalized nine days in the Children's Hospital Psychiatric Unit as a result of this incident.[4] Dr. Schwartz did express "a concern about [the] recent hospitalization" (Tr. 63), but was never asked by the ALJ to explain or elaborate on his concern. Without an evaluation and discussion of this evidence and its

---

[4]In fact, plaintiff had been released from the hospital the morning of the ALJ hearing. (Tr. 38).

implication on plaintiff's ability to function in the relevant domain, the Court cannot discern whether the ALJ simply overlooked this evidence, or considered it but determined that it was not entitled to persuasive weight. The ALJ's assessment is incomplete and the Court is unable to conclude the ALJ's decision in this regard is supported by substantial evidence.

### 3. Whether the ALJ erred in finding that plaintiff's impairments fails to meet or equal Listing 112.11 for ADHD.

In determining that plaintiff does not meet or equal a listed impairment, the ALJ's decision states, "This is supported by the testimony of the medical expert." (Tr. 15). The ALJ's decision provides no further explanation for this finding.

The medical advisor testified:

> Q. In your opinion, does he have an impairment or a combination of impairments that meets or equals any of the listings?
>
> A. It would depend, your honor, on which scores you really focused on here as being the most relevant. In other words, if I take his higher scores showing the higher capacity and his capacity to do fairly well when he's in the IEP, more of the small setting, I would say, no. I would say that, yes, he has issues: ADHD and some learning issues. But, not as severe enough to meet or equal listing. If you were to focus on those lower scores and, primarily in the [INAUDIBLE] people were saying, then perhaps.

(Tr. 64).

Plaintiff asserts the ALJ erred when she failed to provide any explanation for her determination that plaintiff does not meet or equal Listing 112.11 for ADHD.[5] The

---

[5]Listing 112.11 for Attention Deficit Hyperactivity Disorder requires "developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." In addition:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following:
>
> 1. Marked inattention; and

Commissioner concedes the ALJ's explanation was "rather brief," but argues that the ALJ's thorough analysis on whether plaintiff functionally equaled the Listings effectively showed plaintiff did not meet or equal Listing 112.11.

As explained above, the ALJ's explanation for finding less than marked limitation of functioning in the domains of Acquiring and Using Information and Interacting and Relating With Others was deficient. Thus, the ALJ's failure to further explain her Listing finding was likewise in error.

## V. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176. On remand, the ALJ should properly evaluate the special education services and accommodations plaintiff has received throughout his school years, as well as his consistently significant delays in reading and writing on his ability to function in the relevant domains.

---

2. Marked impulsiveness; and
3. Marked hyperactivity;
and
B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

The "paragraph B2" specified in the Listing requires marked impairment in age-appropriate cognitive/ communicative function, or marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or deficiencies of concentration, persistence or pace.

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence

Four of 42 U.S.C. § 405(g).

Date: 5/18/12

Karen L. Litkovitz
United States Magistrate Judge

JACQUELINE DODSON,                    Case No. 1:11-cv-332
O/B/O S.L.S.,                         Spiegel, J.
        Plaintiff                     Litkovitz, M.J.

        vs

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).